The next case for oral argument this morning is Artis v. Santos, Appeal 22-2619. Mr. Cooper should be appearing remotely. Okay, I believe I'm unmuted. Good morning. Good morning, Mr. Cooper. Can you hear me okay? I can. Good morning, Judge Saney. Whenever you are ready, please proceed. I am ready. Good morning, judges. We're here today for three reasons, at least from the perspective of the plaintiff. And the first is that Mr. Hayward was permitted to testify. It's plaintiff's position that Mr. Hayward's report and his testimony did not comport with Rule 702, nor with Daubert. You're not challenging Mr. Hayward's qualifications, correct? I'm not challenging his qualifications to the extent that he's an expert as to insurance, but Mr. Hayward's testimony wandered into the area of bonding, and that's where plaintiff has a real concern. Does that answer the question, Judge Wood? Yeah, go ahead. Okay, so Mr. Hayward, granted, you know, is a skilled witness and has expert knowledge as to insurance, but as to the issues in this case, specifically as to bonding, he did not have that expertise. Mr. Hayward, in the opinion of the plaintiff, should have never even reached trial. This sounds like something different than you argued before the district court. Did you raise this issue before the district court that Mr. Hayward was not an expert in bonding and couldn't give this opinion? Your opinion, your challenges in the district court seemed more grounded in the type of opinions that were being given and the fact that he was relying on his expertise in order to give those opinions. Yes, I agree, and I do have my district court brief, and I do have some testimony, or I should say I have some transcripts, not all. I can tell you that based on . . . I can tell you as an officer of the court that I remember challenging Mr. Hayward's testimony and arguing that he was giving testimony as to issues for which he had not been disclosed. Let me ask you this, Mr. Cooper. With respect to this bonding business, it does appear that there was some cross-examination, or perhaps you were pointing out that he had relied in part on an online article about bonding, but it seems to me that this is all within the scope of the district court's discretion, and it would go to the weight of his evidence, not the admissibility of his evidence, especially when a contemporaneous objection about going beyond the scope of the Rule 702 certification doesn't seem to have been made. Judge, I don't have the transcript in front of me. I certainly recall having objected to some of the answers by Mr. Hayward. Well, it seemed more like, do you really know about bonding if you're looking at online articles about it? But this was in front of the trier of fact, and so without saying, without asking for a sidebar or something, without getting an instruction from the judge to disregard something that would have alerted the district court judge, that's the problem. I understand, Judge. Okay. No, I certainly understand. And as I indicated, I felt as though, or a plaintiff felt as though Mr. Hayward's testimony was in some part granted based on his own expertise, but otherwise on Internet clippings, random articles that he had found on the Internet. But, you know, if you are an expert, though, and surely Mr. Hayward was. He had 40 years of experience in this. He had handled insurance brokerage services to municipalities in particular. Kumho Tyer says that experience is a perfectly legitimate way to demonstrate the expertise of a proffered expert witness. So his main message seems to be that if you employ somebody with this kind of criminal record, it's going to cost you one way or the other. And it seems that he had plenty of expertise for that. Yes, Judge. The other issue, one of three issues, is the statement by one of the prospective jurors. And the district court's opinion in document 163, page 9, certainly is helpful since I don't have the questionnaire. I assume Mr. Tolbert doesn't have the questionnaire. Can you speak a little bit about that? How can we even decide this issue when the documents that are central to it are not in front of us? I understand, and I've never had a situation like this before, and I wasn't sure how to handle it. I did ask the district court to provide the document, and my understanding was the district court would have sent the document up. But I have never been in a situation where I've challenged a juror's qualifications and then had to somehow get my hands on the questionnaire. The district court addressed the questionnaire in its post-trial rulings and laid out question and answer. Wouldn't that be sufficient for us to address it? And we also have the testimony during voir dire and the questioning of the juror on that questionnaire. Wouldn't that give us enough? I don't think it would give enough, but I'm looking at page 9 of 163. You don't think it gives us enough? I mean, you're the one challenging this, Mr. Cooper. I don't think so, no. Then how can you challenge? Then how can you raise this challenge? I'm trying to help you out here. It was a friendly question, trust me. And I guess the way I would have phrased it is whether the parties have any reason to question the accuracy of what the district court judge put in her opinion, because in some sense it seems that what the questionnaire said is de facto stipulated. Is there any dispute that she has recorded this properly in her opinion? No, Judge Frickman has recorded properly. However, this is a small smidgen. This is not what the juror actually wrote. The way I see it, a plaintiff is entitled to the questionnaire in order that plaintiff can best challenge the questionnaire and challenge, that is, make a stronger argument that that juror should have been disqualified. Are you withdrawing your argument then? No, I'm not withdrawing the argument, Judge. My position is I had, in my opinion, I had an obligation to make the argument and I made every effort to try to get my hands on the questionnaire. I don't think it would have been appropriate to abandon the issue simply because I could not get my hands on the questionnaire. Then what is it you think we should review to make a determination on your challenge? Because you've just responded to both Judge Wood and myself that you don't think we can rely on the voir dire and the questions asked about the questionnaire during voir dire, and you don't think we can rely on the district court's post-trial ruling that lays this out. So what can we rely on from your viewpoint in assessing your challenge to the juror? Well, I think the questionnaire is needed, and I'm not saying that everything that you just listed can't be relied upon. It can be in some part, but I think we need the questionnaire. We need to see the questionnaire. We need to see what the juror wrote on the questionnaire. But didn't you drop the ball on this? I mean, as I understand it, the last communication between you and the district court happened after the district court said, I can't send this up, it's not part of the appellate record for purposes of Federal Rule of Appellate Procedure 10A, then sort of thinks maybe the catch-all provision of 10E3 applies, but the district court, as I understand it, ultimately said that you had to present your motion to the Seventh Circuit Court of Appeals for disposition, but you never came to us and said that this kind of weird, not-quite-in-the-record thing needed to be added. And so what happened is you filed a motion, or Santos files a motion to dismiss the appeal. A motions panel of this court denies that motion, tells Santos he's free to argue, you, in other words, you're free to argue that our review is precluded, but it's all very strange, and I don't think it was very cleanly presented. Again, I haven't had a situation like this in the past. The way I understood the district court's order, at least this is a reasonable interpretation, that the district court would automatically cause the questionnaire to be part of the long record, and I assume coming here this morning that the panel has had an opportunity to look at the questionnaire. Why did you assume that when the district court denied your motion to supplement and you never asked us to supplement? Because the way I understood the district court was that the district court was saying that this is something that's automatic and that attorneys would not be provided with the questionnaire. That's not what they said, though. I mean, that's not what she said. She said that this questionnaire isn't part of the record, formally speaking, and we would need to supplement, which she felt she couldn't do, but perhaps we could. I'm sorry, Judge. I did not interpret it that way. I interpreted it as the questionnaire would make its way to the panel, but for whatever reason, the attorneys couldn't see it. Mr. Cooper, you're into your rebuttal time if you want to save some. I'll just move quickly. The other issue is the special verdict form, and there are a variety of reasons why a special verdict form is needed. One is complexity. I don't believe that there was anything so complex in this matter that required a special verdict form. I do believe that 3 and 23 were, in fact, confusing. I understand that they're model instructions. I get it, but it doesn't mean that because it's a model instruction, and 3 and 23 are the same, in my opinion, it doesn't mean that jurors won't be confused. I think 3 and 23 needs to be changed. That's all I have. Thank you, Mr. Cooper. Mr. Tolbert. Good morning. Good morning, Your Honors. My name is Michael Tolbert, and I represent Adrian Santos. I'm going to respectfully ask that this court affirm the jury verdict that was reached in favor of Adrian Santos and deny any attempt for a request for a new trial for a few reasons. The first reason is the district court did not abuse its discretion in allowing Mr. Haywood to testify as an expert because he satisfied both federal rule of evidence 702 and also Dauber's standards. Mr. Tolbert, on that grounds, on that issue, the district court, when the district court ruled on the issue of whether or not Mr. Haywood relied upon reasonable and reliable methods, just gave a one-sentence conclusion. He said, oh, and his methods are reliable. Is a statement like that sufficient for a district court to explain the reasoning that would trigger abuse of discretion, or should we look at this de novo given the fact that the district court did not provide any sort of explanation other than the bottom line, oh, the methods are reliable? Your Honor, I believe that is sufficient enough. The response that they gave was sufficient enough because I believe under the appropriate standard, the district court had the discretion, and it would have to be shown that it's a serious error in judgment. But wouldn't you expect the district court to provide some explanation or reasoning for that conclusion? You know, I find the methods reliable because of his experience and the way he applied it and looked at external factors, what have you. And here, we don't have any of that, right? Your Honor, in context and when you look at the record in terms of what was presented and the painstaking detail that Mr. Haywood went through, first to not only qualify himself as an expert, but also to show the correct methodology was used. Specifically in the record, Mr. Haywood not only elaborated on his 40 years of experience in the insurance industry, but he also specifically cited to the underwriting process, which talked about analyzing risks, how insurance companies, and particularly bonding when you're looking at whether somebody has a risk-adverse profile, whether or not it would be a good risk to bring somebody on. There's so many problems that can come along with that. There could be surcharges. There could be increased premium. And Mr. Haywood went through that in painstaking detail, and I believe that in light of the testimony that was given from Mr. Haywood, the court felt comfortable enough qualifying him not only as an expert, but also finding that his testimony was reliable, which I would imagine probably led to the brevity of the response because the record was so robust with so much information that qualified him as an expert in his methodology. So that's the way I took it because of how detailed he was. There was really no question, and if you look at the record, Your Honors, one of the big issues that I had, and I believe most likely why I believe that the expert issue really is a non-issue, is because Mr. Cooper didn't necessarily, he really waived the argument. His objection was not specific. It was very general. How could he waive the argument, though? There was a Daubert motion raised in advance, which was pretty detailed, and then before trial, right before trial, when he objected to Mr. Haywood taking the stand, he raised the same arguments that he had raised in his Daubert, and the court said it had previously ruled on the matter, and then when the question was presented when Mr. Haywood was testifying, he rested on his prior objection. I don't know how that could be waivered. Your Honor, my position on that is he did file motions to exclude early on in the pretrial phases, but right when Mr. Haywood began to provide his testimony, I believe that his objection, some of the points that was earlier raised in terms of specificity of what the judge should have probably said in terms of qualifying Mr. Haywood as an expert or finding his methodology to be in error, maybe we could have gotten more information if Mr. Cooper would have been more specific in terms of outlining exactly what he found wrong. What else do you think he should have done at that point? Again, there was a Daubert raised in advance and a hearing on that, and before Mr. Haywood took the stand, Mr. Artis' counsel did reiterate his objection with some detail, and the court said I previously ruled on it. Once Mr. Haywood's on the stand in front of the jury, do you think Mr. Cooper or the attorney representing Mr. Artis should have gone back into all those issues again? Absolutely, Your Honor. What requires that? Well, I believe that if you look at the case that I did cite that dealt with the waiver issue, let me see if I can find it. It's United States v. Winn. It's 845 Federal 2nd, 1439, 7th Circuit, 1988. Although it's an embezzlement case, Your Honor, and I do understand that that case is not necessarily completely on all fours, but the general concept of not having specific and having not general objections, the court found that that was a problem in terms of analyzing whether an objection was appropriate. So that essentially is our position here. There are reasons why you have to make specific objections. I believe Your Honor has actually pointed out something that jumped right out at me at the beginning of this, is the same argument that Mr. Cooper raised about the bonding issue, which was never raised at the district court level and raised for the first time here, should have been raised specifically and in a non-general way before the district court. But that's a separate waiver issue, though, by raising something for the first time on appeal, than what you've been arguing about what was waived before the district court. I respectfully agree with that, Your Honor, but I think the concept of properly bringing objections before the district court to allow everyone to understand exactly what you're articulating so that we can have a clean record should be incumbent upon the person, particularly in this case when they're bringing an appeal. So if we assume, though, that there isn't waiver just for the sake of discussion, where does that leave your argument about Mr. Haywood's testimony? Well, I believe, Your Honor, in my brief, waiver was one component of it, although it wasn't the main part. But I believe that even if you discard the waiver issue and you go through the analysis of well, at first I thought that Mr. Cooper was kind of trying to allude to the fact that Mr. Haywood was not qualified. Well, that's right. As I understood him, he was saying Mr. Haywood was qualified for certain things. Maybe he was qualified for certain kinds of insurance practices, but there's a whole different field of expertise that he wasn't qualified for, but he had turned to that in his testimony. I think that's a summary. Right, and I would respectfully disagree with that. And to answer your question directly, where that leaves us is going through the methodology and whether or not what Mr. Haywood said satisfied the standard. Well, did he know anything about bonding? I guess bottom line, that was the question. Your Honor, that bonding and insurance, essentially what the bond is and what the testimony in the record was from Tom Dabberton and the insurance risk professionals who Mr. Santos consulted with before he terminated Mr. Artis, a bond essentially is just a protection if someone steals. No different than the crime policy that was at issue in this case. So really the terms are interchangeable, and I think that Mr. Cooper is mixing terminologies, but the concept is the same. Under the crime policy. And that was in the record. That was in the record, yes. That was in the record, Your Honor. But the concept is the same. If you steal from us, we need protection. Crime policy. If you steal from us, we need protection. The bond specifically deals with the individual, whereas the crime policy dealt with the entire clerk's office at the City of East Chicago. Didn't Mr. Haywood testify to that he had had experience with bonds being issued? He did. He did. During his 40 years. Yes, during his 40 years, and he's a specialist in municipal entities, particularly like the one that Mr. Santos was managing, the clerk's office. He actually was the risk manager for the Lake County clerk's office, which is a little bit of a step above, although I don't want that on the record. But let's just say that he insured other clerk's offices. He insured an airport. He was an unofficial risk manager for an entire city of Gary. So he was more than qualified not only in bonding but also insurance. All right. So we basically don't need to worry that much about waiver if your primary argument is on the merits. I agree, Your Honor. I think that there's more than enough evidence to show that the methodology that he used was sufficient. If you look at the record, he went through each element of Daubert, peer review. He also talked about a zero rate of error. And the reason he got to that is because essentially under the underwriting process, what he would do is look at the crime policy and look at the condition. In this case, we had Mr. Artis, who had stolen $1.5 million previously in 2005 from the city, who ultimately hired him back before Mr. Santos. The record doesn't show anything about why he is hired back. I was a little surprised. Your Honor, the record is clear in terms of why he was hired back. And there was a clerk that Mr. Santos actually replaced by the name of Mary Morris Leonard, who hired Mr. Artis essentially as a favor. And that's what caused this whole problem. Mr. Santos enters the office in January of 2016. He tries to implement new standards, one of which I don't want people who stole $1.5 million working for me. And that's essentially what caused all of this. Once he found out that that was the case, he terminated Mr. Artis. The claim was won for a First Amendment violation. And the record clearly shows, which bumps us against why this verdict should be affirmed, because it's more than enough, if you apply reasonable emphasis, to support the verdict. He showed not only did Mr. Artis have a felony, but he also showed the letters as well as the communications that he had with insurance professionals about why this was not a good idea to keep Mr. Artis. So we believe that that's more than enough to support the verdict. With that being said— Do you have any way out of this procedural snarl we're in with respect to the challenge to the juror? Is it your position we should just consider it not capable of decision, or should we go on the record that we have? Your Honor, I would—you know, that's the reason why I filed my original motion to dismiss, because I believe that really under the R.K. Company v. SEC decision, it's 846 F. 3rd, 846 7th Circuit, 2010. Basically, you need to present the appropriate record for appellate review, and I believe in that case, there was a little bit different. I think there was deposition testimony that was not provided for the court to consider. In this case, it is unique because we have a jury questionnaire. My position on that is that Mr. Cooper didn't—which is the reason why I filed my motion to dismiss the appeal—he didn't take the appropriate steps to actually secure the questionnaire. Or, I can't speak for Mr. Cooper, but if it were me, if that was a big enough issue for me, I would have asked that the court put that juror questionnaire to the side and sequester it. And I'm sure the court would have done that, just like any other exhibit book, just like anything else, if you believe that that was going to be an issue for appeal. Mr. Tolbert, that may have been a better way to proceed, but why can't we rely on what the district court included in the post-trial motions, where the court included the response to the question in the questionnaire? Your Honor, I would welcome that you rely on that part of the record because I believe under U.S. v. Allen, the Allen case, I still believe even if you relied on what happened at the district court level, Mr. Cooper or Mr. Artis just—he doesn't—the appeal fails because the juror gave unequivocal information to everyone in that courtroom. You aren't challenging—I'm sorry to interrupt, but your time is dwindling—you aren't challenging the accuracy of what the district court judge represented in the post-trial motions that this juror said on the questionnaire? Well, what was said— This isn't addressed in the brief, so I want to make sure I'm not missing something. Right. So, Your Honor, for fear of misstating what actually happened or what was said in the questionnaire, I think what the district court actually provided us was an offshoot of what Mr. Cooper believed the issue was, which essentially— She included a quote. That's right. From the questionnaire. So more than just a summary of what Mr. Cooper had argued, I understood her ruling to be providing the precise quote given by the juror in the questionnaire that's at issue here. I would agree. In that additional comment section, right? I would—I believe that that wasn't the entire— It's not the entire questionnaire. But it is enough. But it's the quote at issue. Your Honor, I don't have a problem with the court relying on that because I still think that under the U.S.—under the Allen analysis, because the juror essentially was committed to saying that she could follow the law, and, in fact, under Mr. Cooper's very, very rigorous questioning of that juror and voir dire, she specifically said that this—any decision that I make would not be based on color. And, in fact, if you look at what her comment was, her comment specifically dealt with fairness, and I think it has something to do with African-Americans being pulled over in certain areas more than other areas, which has nothing—that had nothing to do with our case, which was a First Amendment retaliation claim, which dovetails nicely into the Allen case because Allen found that the statement that was made in Allen by the juror was marginal at best because it had nothing to do with the case. Okay. Thank you, Mr. Tolbert. Thank you, Your Honor. I appreciate your time. Mr. Cooper? You have a couple minutes. You're on mute. Go ahead, John. There you go. Yeah. Hi. Judge, I just want to just go back to something I said earlier. Judge Springman is a great judge and a great deal of respect for her. One second, please. Could you do the clock, please? Thank you. Go ahead. I'm sorry. I did mean to interrupt, but they didn't start the clock, so go ahead, please. Judge Springman did a wonderful job presiding over the trial. It was a ruling trial. I can tell you that what's in Document 163, her recollection, it's accurate. I just don't think it's enough. I didn't take it to be a recollection. It seemed to me that she was taking it off the questionnaire because it's a quote. That's what it looked like. Either way, you're saying you're not contesting it, though. I'm taking this as essentially a stipulation by both parties that we can rely on what Judge Springman wrote down. Judge, we can't, but I don't think it's enough. I believe that the court would need to see the question in its entirety. I'm sorry, your response . . . But we have the haute voir dire. We have the follow-up transcript in which the judge is exploring what exactly did this juror mean by writing these comments. Why doesn't that get us as far as we need to go? Judge, I don't think it does. My biggest concern was I believe that I want to make clear that Judge Springman is a forthcoming person, is a truthful person, and what she put into Document 163 is accurate. Okay. I think that works to your benefit, Mr. Cooper, because then we can address the issue. Yes, your Honor. Is that all you have? That's all I have, Your Honor. Okay. I thank everyone for hearing us this morning. Thank you. The case will be taken under advisement, and we are going to take about a 10-minute break before we pick back up.